UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAZARO PEREZ,<br><br>        Plaintiff,<br><br>v.<br><br>ARROW LINEN SUPPLY COMPANY, INC., SALVATORE MAGLIOCCO, and JOHN ANTHONY MAGLIOCCO<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**FLSA Collective Action Complaint**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff LAZARO PEREZ by and through counsel, alleges upon information and belief, except as to the allegations that pertain to Plaintiff which are alleged upon personal knowledge, as follows:

## INTRODUCTION

1. This action arises out of Defendants Arrow Linen Supply Company, Inc., Salvatore Magliocco, and John Anthony Magliocco's (collectively "Defendants") failure to pay Plaintiff Lazaro Perez ("Plaintiff") for all hours worked and overtime at the rate of one and one half times his regular hourly rate in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's Fair Labor Standard Act claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3. This Court has jurisdiction over Plaintiff's New York state law claims pursuant to 28 U.S.C. § 1367, in that they arise out of the same set of operative facts and are so related to Plaintiff's FLSA claims that they form part of the same case or controversy.

4. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) because Defendant Arrow Linen Supply Company, Inc. resides in this judicial district in that its principal place of business is located in this district. Furthermore Defendants John Anthony Magliocco and Salvatore Magliocco reside in this district.

## THE PARTIES

5. Plaintiff Lazaro Perez is a resident of the county of Kings in the state of New York. Defendants employed Plaintiff from in or around 2009 to in or around August 8, 2015.

6. Defendant Arrow Linen Supply Company, Inc. ("Arrow") is incorporated in the State of New York with its principal place of business located at 467 Prospect Avenue, Brooklyn, New York 11215.

7. In addition to its Brooklyn facility, Arrow operates a second facility located at 615 South Street, Garden City, New York 11530.

8. At all times relevant to this action, Arrow has been a business or enterprise engaged in interstate commerce employing more than two (2) employees and earning gross annual sales over $500,000.

9. Defendant John Anthony Magliocco ("Defendant John") is a resident of the County of Nassau in the state of New York.

10. At all times relevant to this action Defendant John has been the President and, on information and belief, a partial owner of Arrow. As President of Arrow, Defendant John had the power to hire, fire, and set the wages and hours of all the employees of Arrow including Plaintiff.

11. Defendant John oversees Arrow's operations. Defendant John directed Plaintiff's work through the instructions that he gave to supervisors to whom Plaintiff reported.

12. Defendant John hired Plaintiff to work at Arrow.

13. Defendant Salvatore Magliocco ("Defendant Salvatore") is a resident of the County of Nassau in the State of New York.

14. At all times relevant to this action Defendant Salvatore has been the Vice President and, on information and belief, a partial owner of Arrow. Defendant Salvatore had the power to hire, fire, and set the wages and hours of Plaintiff.

15. Defendant Salvatore is responsible for bookkeeping and accounting at Arrow.

16. The acts of Arrow charged in this Complaint were authorized, directed or accomplished by Defendants John and Salvatore individually or jointly, by themselves or their agents, officers, employees, or representatives, while actively engaged in the management of the Arrow's textile supply business.

17. At all times relevant to this action, Defendants have been and continue to be "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

## FACTS

18. Defendants are engaged in the business of supplying textiles such as uniforms, table linens, aprons, towels, and bedding to business establishments including restaurants, caterers, country clubs, beauty salons, healthcare offices, hotels and motels, delis, pizzerias, butchers, fish stores, and other businesses in New York, New Jersey, and Connecticut.

19. Defendants hired Plaintiff to work as a helper who worked out of their Brooklyn facility in or around 2009. As a helper, Plaintiff was assigned to a driver whom he helped deliver textiles to Defendants' customers.

20. Within a few months Defendants promoted Plaintiff to the position of driver. Plaintiff's job as a driver was to drive Defendants' delivery trucks.

21. Defendants scheduled Plaintiff to work five (5) days per week—Monday through Friday. Each day, Plaintiff drove Defendants' truck, delivering clean textiles to Defendants' customers and returning dirty textiles to Defendants' premises to be laundered.

22. Before March of 2015, Plaintiff began his work day by clocking-in to Defendants' time clock. He ended his day by clocking out.

23. Defendants automatically deducted one hour for lunch each day that Plaintiff worked and then paid him for the hours during which he was clocked in.

**February 2015 -August 2015**

24. In February of 2015, Defendants opened their Garden City Facility.

25. After the opening of the Garden City facility, Defendants directed Plaintiff to drive to Garden City from Brooklyn each morning in a company minivan. On information and belief the minivan had a Gross Vehicle Weight Rating ("GVWR") of 10,000 pounds or less.

26. Defendants directed Plaintiff to transport various items including invoices, clean towels, tablecloths, uniforms, and napkins from Brooklyn to Garden City in the minivan.

27. In addition, starting in or around March of 2015, Defendants directed Plaintiff to regularly transport two or three company employees from Brooklyn to Garden City in the minivan.

28. The trip from Brooklyn to Garden City took approximately one to one and one-half hours each morning, depending on traffic.

29. Plaintiff would arrive at the Brooklyn facility at around 5:00 am. He would generally arrive at the Garden City facility between 6:00 and 6:15 am.

4

30. At the end of each work day, Defendant regularly directed Plaintiff to load the minivan with supplies and/or bags of clean or dirty textiles to transport to Brooklyn.

31. Plaintiff would spend approximately five to ten minutes loading the minivan with these supplies/textiles and then drive to the Brooklyn facility.

32. Plaintiff would generally leave Garden City to drive to Brooklyn between 3:30 pm and 5:00 pm,

33. Because of the timing of the return trip to Brooklyn, traffic was very heavy and the trip to Brooklyn regularly took between one and one-half and two hours.

34. At first Plaintiff would clock-in when he started his work day at the Brooklyn facility and clock out when he returned to Brooklyn, but in or around March of 2015, Defendants directed Plaintiff to clock-in when he arrived at the Garden City facility and clock out before he started loading the minivan for his return trip to Brooklyn.

35. Defendants only paid Plaintiff for the time that he was clocked in.

36. After Defendants directed Plaintiff to clock in and out in Garden City, they never paid Plaintiff for the two and one-half to four hours that he worked each day transporting textiles, invoices, and/or people from Brooklyn to Garden City and from Garden City to Brooklyn.

**FIRST CAUSE OF ACTION**
**Overtime Violations of the FLSA**

37. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if they were set forth herein.

38. Plaintiff was an employee of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e) and (g).

39. During his employment with Arrow, Plaintiff drove Defendants' trucks from New York to Connecticut to deliver clean textiles and pick up dirty textiles.

40. Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(b), 206, and 207 and therefore individually covered by the FLSA.

41. Pursuant to section 306 of the SAFETEA—LU Technical Corrections Act of 2008, PL 110–244, June 6, 2008, 122 Stat. 1572, Plaintiff was covered by the overtime provisions of the FLSA during the time period that he worked at the Garden City facility because he spent part of his work day driving a minivan with a GVWR of 10,000 pounds or less.

42. From in or around March of 2015 until August of 2015, Plaintiff regularly worked forty (40) or more hours per week during which he was clocked in. Defendants paid Plaintiff for these hours.

43. Plaintiff worked an additional twelve and one-half (12.5) to twenty (20) hours driving supplies, textiles, and/or people between Brooklyn and Garden City and back.

44. Defendants failed to pay Plaintiff anything at all for these hours that he worked driving between Brooklyn and Garden City and back, let alone pay him at the overtime rate of time and one half his regular hourly rate for these hours that he worked over forty (40) in a workweek.

45. Defendants actions were willful.

46. As a result of Defendants' violations of the FLSA, Plaintiff has suffered damages by being denied overtime at time and one half his regular rate for hours worked in excess of forty in a workweek in an amount to be determined at trial and is therefore entitled to recovery of such

amounts, an equal additional amount as liquidated damages, post-judgment interest, reasonable attorneys' fees, costs, and punitive damages pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### Failure to Pay Wages and Overtime Wages – New York Labor Law

47. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if they were set forth herein.

48. Plaintiff was an employee within the meaning of N.Y. Lab. Law § 190(2), and N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14. Defendants were employers within the meaning of N.Y. Lab. Law § 650(6).

49. As detailed above, from in or around March of 2015 until August of 2015, Defendants failed to pay Plaintiff anything at all for the approximately twelve and one-half (12.5) to twenty (20) hours each week that he worked before he clocked in and after he clocked out.

50. It is unlawful under the NYLL law for an employer to suffer or permit an employee to work without compensation for all hours worked.

51. Moreover under the NYLL and implementing regulations, Defendants were required to pay Plaintiff time and one-half his regular hourly rate for each hour over forty (40) in a workweek in which he drove a vehicle with a GVWR of 10,000 pounds or less.

52. Also as detailed above, Defendants actions were willful.

53. Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants all unpaid wages due him for unpaid hours worked unpaid overtime wages at one and one-half times his regular hourly rate for each hour worked in excess of forty hours in a workweek, liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## THIRD CAUSE OF ACTION
### Notice Violations – N.Y. Lab. Law § 195(3)

54. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if they were set forth herein.

55. Section 195(3) of the NYLL requires every employer to "furnish each employee with a statement with every payment of wages... For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."

56. Defendant provided pay statements to Plaintiff that did not include an accurate number of hours worked.

57. The pay statements that Defendant provided to Plaintiff included the number of regular and overtime hours <u>paid</u>, not the number of regular and overtime hours <u>actually worked</u> as required by the NYLL.

58. Defendant violated NYLL § 195(3) and consequently owes Plaintiff statutory damages as specified by NYLL § 198(1-d).

59. Plaintiff seeks statutory damages of $250.00 for each week of violation as specified by NYLL § 198(1-d), reasonable attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief as follows:

(a) An award of damages to Plaintiff according to proof, including FLSA liquidated damages, and interest, to be paid by Defendants;

(b) An award of damages to Plaintiff for violations of the NYLL, including statutory NYLL damages and liquidated damages;

(c) Costs of action incurred herein, including expert fees;

(d) Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. §§ 663, 198 and other applicable statutes;

(e) Pre-Judgment and post-judgment interest, as provided by law; and

(f) Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action and claims with respect to which he has a right to a jury trial.

Dated: August 22, 2016

Respectfully submitted,

HARRISON, HARRISON & ASSOCIATES

_____/s/ David Harrison_____
David Harrison, Esq.
Julie Salwen, Esq.
110 State Highway 35, Suite 10
Red Bank, NJ 07701
(718) 799-9111 Phone
(718) 799-9171 Fax
nycotlaw@gmail.com
*Attorneys for Plaintiff*